```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4             v.                          19 CR 626 (PAE)

 5   AGUSTIN MARMOLEJOS,

 6             Defendant.                  Sentence
                                           (via CourtCall)
 7   ------------------------------x

 8                                         New York, N.Y.
                                           November 24, 2020
 9                                         11:00 a.m.

10   Before:

11
                    HON. PAUL A. ENGELMAYER,
12
                                           District Judge
13
                            APPEARANCES
14
     AUDREY STRAUSS
15        Acting United States Attorney for the
          Southern District of New York
16   BY:  BENJAMIN SCHRIER
          Assistant United States Attorney
17
     TELESFORO DEL VALLE, JR.
18        Attorney for Defendant

19
     Also Present:
20   Sonia Berah, Interpreter (Spanish)

21

22

23

24

25
```

```
 1                    (Case called)

 2                    THE COURT:  I'm calling the case of United States v.

 3      Marmolejos, 19 CR 626.  Who do I have for the government?

 4                    MR. SCHRIER:  Good morning, your Honor, Ben Schrier

 5      for the government.

 6                    THE COURT:  Good morning, Mr. Schrier.  Who do I have

 7      for the defendant?

 8                    MR. DEL VALLE:  Good morning, your Honor, Ted Del

 9      Valle representing Mr. Agustin Marmolejos.

10                    THE COURT:  Good morning, Mr. Del Valle.

11                    Mr. Marmolejos, are you present?

12                    THE DEFENDANT:  Yes.

13                    THE COURT:  I will note for the record that I can see

14      Mr. Marmolejos as well as both counsel who have spoken.

15                    Are our interpreters, Ms. Berah and Ms. Hess, both on

16      the call?

17                    THE INTERPRETER:  Only Sonia Berah is on the call.  We

18      were not able to merge the other line, your Honor.

19                    THE COURT:  Thank you, Ms. Berah.

20                    Ms. Berah, you are a court certified pre-sworn

21      interpreter, correct?

22                    THE INTERPRETER:  Yes, sir, I am.

23                    THE COURT:  Very good.  Let's get started.

24                    Before we get to the content of the sentencing

25      proceeding, I need to go through a few preliminaries because of
```

1    the remote nature of the proceeding.  Here goes.

2          We are in the midst of the COVID-19 pandemic.  I'm

3    conducting this proceeding pursuant to the authority provided

4    by Section 15002 of the CARES Act and the standing orders

5    issued by our chief judge pursuant to that act.  Counsel are

6    appearing before me by video conference, so is the defendant.

7    Indeed, we are all here by video conference.  I confirmed a

8    moment ago that everyone can hear me.

9          Please, everyone, let me know immediately if you are

10   having any difficulty hearing me or hearing the speaker and for

11   the defendant and Mr. Del Valle and Mr. Schrier, if you can't

12   see me or see the others, please do your best to make that

13   known as well.

14         I will be calling on each of you during these

15   proceedings.  When I do, please identify yourself by name for

16   clarity of the record.  Please don't interrupt each other or me

17   during the conference.  Otherwise, it's impossible for the

18   court reporter to make a record.

19         Mr. Del Valle, I have been advised that your client

20   can't participate in person in the usual way today, that is by

21   being physically present in the courtroom on account of various

22   public health considerations relating to the COVID pandemic.

23         Mr. Del Valle, is that so?

24         MR. DEL VALLE:  Yes.  And I conferred with my client

25   about this, and he has indicated to me that he consents to the

KBOMAR1

1      proceedings going on in this fashion.

2              THE COURT:  Very good.  I will get to that.

3              Right now I just want to make sure that there is

4      reason for his inability to have this scheduled in person.  And

5      I gather it is because of a desire on your part and his not to

6      undertake what additional public health risks might be

7      presented by an in-person proceeding, or for your client what

8      additional quarantines might be generated by an in-person

9      proceeding.  Is that correct?

10             MR. DEL VALLE:  That is correct, your Honor.

11             THE COURT:  I find then that conducting this

12     proceeding in person in court is not reasonably available.  I

13     do, however, find that videoconferencing is reasonably

14     available and that Mr. Marmolejos is able to participate by

15     those means.

16             As to the point you raised a moment ago about your

17     client's waiver of an in-person proceeding, Mr. Del Valle, I

18     think you have not provided us with a written waiver signed by

19     your client to that effect, is that correct?

20             MR. DEL VALLE:  That is correct, your Honor.  I have

21     no access to have my client physically sign it.

22             THE COURT:  Understood.  I therefore find that, based

23     on what you've said, obtaining a written waiver wasn't

24     realistically available.  Have you nonetheless, Mr. Del Valle,

25     spoken with your client about the right to have this proceeding

1    occur with everyone in court if he so chose?

2                MR. DEL VALLE:  I have, your Honor.

3                THE COURT:  Did you explain to your client that he had

4    a right to be present in court with all of us present in court

5    for sentencing?

6                MR. DEL VALLE:  I did, your Honor.

7                THE COURT:  Did you believe, based on that

8    conversation, that your client understood that right?

9                MR. DEL VALLE:  I do, your Honor.

10               THE COURT:  Was he willing to give up that right?

11               MR. DEL VALLE:  Yes, your Honor.

12               THE COURT:  And did an interpreter assist you or were

13   you able to speak with him in Spanish in having that

14   communication?

15               MR. DEL VALLE:  I was able to speak to him in Spanish

16   having that communication, your Honor.

17               THE COURT:  Mr. Marmolejos, I am going to turn to you

18   now.  Do you understand that you have a right to have this

19   sentencing proceed in person, meaning that you and your lawyer

20   and the government's lawyer and me and everyone else would be

21   assembling in person in a courtroom?

22               THE DEFENDANT:  Yes.

23               THE COURT:  And do you understand that you are not

24   required to proceed today by video conference, and if you'd

25   like to exercise your right to have this sentencing proceed in

1  person, we can reschedule it as promptly as we can so that it

2  proceeds in person.

3          Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  If you agree to proceed by video

6  conference, you and Mr. Del Valle obviously can still equally

7  participate in the proceeding.  And if you want at some point

8  or he wants at some point to have a private conversation, just

9  the two of you, Mr. Smallman can arrange for you to confer in

10  private in a private video room for just the two of you.

11          Do you understand that?

12          THE DEFENDANT:  Yes, yes.

13          THE COURT:  Do you wish to give up your right to be

14  sentenced in person with your lawyer by your side?

15          THE DEFENDANT:  Yes.

16          THE COURT:  I need you to answer questions yes or no,

17  and then the interpreter will communicate your verbal yes or no

18  to me.  Thank you.

19          I find a knowing and voluntary waiver of

20  Mr. Marmolejos' right to be present in person for this

21  sentencing.

22          Finally, I need to make a finding as to why this

23  proceeding can't be delayed without harm to the interests of

24  justice.

25          Mr. Del Valle, I'm mindful we were supposed to have

1    this proceeding originally in the month before the pandemic

2    struck.  Very briefly, why is it that the sentencing proceeding

3    can't be any further delayed?

4         MR. DEL VALLE:  Your Honor, very briefly, this is a

5    sentencing that has been delayed exactly twice because I was

6    not the original lawyer on this case.  And when I came in, I

7    was actually brought in for the sentencing aspect of this case

8    with Mr. Marmolejos.  I did do my due diligence and go over the

9    plea and everything else in the agreement.  And at this point

10   Mr. Marmolejos has been in the institution for a year, almost a

11   year, and in the interests of justice, we are requesting that

12   this matter go forward today on sentencing.

13        THE COURT:  I take it, among other things, the benefit

14   of having a sentencing now is that Mr. Marmolejos, to the

15   extent that he would otherwise be sentenced to a permanent

16   longer-term facility, would get out of the MDC and go to a

17   facility with more space, more programming and potentially

18   reduce COVID risk.

19        MR. DEL VALLE:  That is correct, your Honor.

20        THE COURT:  On those grounds, I also find that the

21   sentencing proceeding cannot be further delayed without harm to

22   the interests of justice.

23        There is one final preliminary matter I need to take

24   up.  As counsel are aware, the Due Process Protections Act was

25   recently passed which requires a Court to advise the government

1   of its *Brady* obligations in a written and an oral order.  I put

2   a written order on the docket of the case.

3           Orally, briefly, Mr. Schrier, I am reminding the

4   government, pursuant to Federal Rule of Criminal Procedure

5   5(f), of its obligations under *Brady v. Maryland* and its

6   progeny to disclose to the defense all information, whether

7   admissible or not, that is favorable to the defendant, material

8   to either guilt or punishment and known to the government.  I

9   remind you that these obligations are continuing ones.  They

10  apply to information whether or not you credit it.

11          I have issued, as I said, a written order to this

12  effect, and I incorporate by reference everything there.  I

13  incorporate by reference as well the list of all the

14  consequences that may follow from the government's common

15  compliance with those obligations.

16          Government, do you understand these obligations and

17  confirm that you will fulfill them and have fulfilled them?

18          MR. SCHRIER:  Yes, your Honor, as to all three

19  questions.

20          THE COURT:  Very good.  One moment.

21          Now we can finally turn to the business of the

22  sentencing.  We are here today to impose sentence in the case

23  of United States v. Agustin Marmolejos.

24          On February 19, 2019, Mr. Marmolejos pled guilty

25  pursuant to a plea agreement to one count of narcotics

1    conspiracy involving the distribution and possession with

2    intent to distribute 400 grams and more of fentanyl and one

3    kilogram and more of heroin.

4           In preparation for today's proceeding I have reviewed

5    the plea agreement, the transcript of the plea proceedings.  I

6    have also reviewed the presentence report, dated June 2, 2019.

7    I have also reviewed the following additional submissions:  The

8    defendant's submission, dated July 6, 2020, the government's --

9    forgive me.  The presentence report was June 2, 2020; the

10   defendant's sentencing submission, dated July 6, 2020; the

11   government's submission, dated June 1, 2020; and numerous

12   letters in support of Mr. Marmolejos from his friends and

13   family filed October 20, 2020.

14          Have the parties received each of these submissions

15   and are there any additional ones?

16          Mr. Schrier.

17          MR. SCHRIER:  I have also reviewed all those

18   materials, your Honor, and there are no other materials in

19   which I am aware.

20          THE COURT:  Mr. Del Valle, same question.

21          MR. DEL VALLE:  I have received all the submissions,

22   your Honor, I have reviewed them, and there no additional ones.

23          THE COURT:  Mr. Del Valle, have you read the

24   presentence report?

25          MR. DEL VALLE:  I have read the presentence report,

1    your Honor.

2            THE COURT:  Have you discussed it with your client?

3            MR. DEL VALLE:  I have discussed it with my client.

4            THE COURT:  Mr. Marmolejos, have you read the

5    presentence report and has it been translated to you?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Have you discussed it with Mr. Del Valle?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Have you had the opportunity to go over

10   with Mr. Del Valle any errors in the report or anything else

11   that should be taken up with the Court?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Mr. Schrier, have you reviewed the

14   presentence report?

15           MR. SCHRIER:  Yes, your Honor.

16           THE COURT:  Putting aside the calculation of the

17   sentencing guidelines for just a minute, does any counsel have

18   any objection to the report regarding its factual accuracy?

19           Mr. Schrier.

20           MR. SCHRIER:  None from the government, your Honor.

21           THE COURT:  Mr. Del Valle.

22           MR. DEL VALLE:  None from the defendant, your Honor.

23           THE COURT:  Hearing no objections, the Court will

24   adopt the factual recitation set forth in the presentence

25   report.  The report will be made a part of the record in this

1    matter and placed under seal.  In the event an appeal is taken,

2    counsel on appeal may have access to the sealed report without

3    further application to the Court.

4           Counsel, I believe you have already publicly filed

5    your sentencing submissions.  If you have not, please do so.

6           Turning to the sentencing guidelines, the Court, of

7    course, is no longer required to follow the guidelines, but I

8    am required to consider the applicable guidelines in imposing

9    sentence.  To do so, it's necessary that I accurately calculate

10   the guidelines sentencing range.

11          Now, in this case there was a plea agreement in which

12   the parties stipulated to a particular calculation of the

13   sentencing guidelines on the premise that the safety valve

14   provision of 18 U.S.C. Section 3553(f) applies.

15          Am I correct that the calculation in the presentence

16   report is in accord with that agreement?

17          Mr. Schrier.

18          MR. SCHRIER:  Yes, your Honor.

19          THE COURT:  Mr. Del Valle.

20          MR. DEL VALLE:  Yes, your Honor.

21          THE COURT:  Mr. Schrier, can you briefly make a

22   proffer to the Court, very briefly, as to why the safety valve

23   applies.

24          MR. SCHRIER:  Yes, your Honor.

25          Prior to pleading, Mr. Marmolejos, with his counsel,

12

met with the government and proffered as to his involvement in
the offense.

Based on the information available to the government,
the government believes that Mr. Marmolejos was truthful and
forthcoming as to the offense conduct.  The government is not
aware of any other factors or aspects of the defendant's
criminal history that would disqualify him for a safety valve
relief.  So on that basis, in the government's view,
Mr. Marmolejos is eligible.

THE COURT:  I agree with that, and I also so find.

Given that, based on the parties' agreement and the
absence of objection and my independent evaluation of how the
sentencing guidelines apply here, I accept the guideline
calculation in the presentence report which, in turn, is based
on the assumption that the safety valve applies.  I find that
the offense level is 27, the criminal history category is I,
and the guideline range is 70 to 87 months.

The next subject I need to cover is departures, which
is to say within the sentencing guidelines framework.  In the
plea agreement, both parties agreed that neither an upward nor
a downward departure within the guidelines framework is
merited.  Having reviewed the presentence report and the
parties' submissions, I share that conclusion.  I find that no
departure is available as a matter of law.  Of course that
doesn't preclude any party from seeking a variance, and I

1   understand that the defense is seeking a downward variance

2   here.

3          Having taken care of those necessary preliminaries,

4   does the government wish to be heard with respect to

5   sentencing?

6          MR. SCHRIER:  Yes, your Honor, briefly.

7          For the most part, the government will rely on its

8   written submissions, but I did want to highlight two facts in

9   particular that I think are germane to sentencing.

10          The first is a point that the government does make in

11   its written submission, which is that the type and quantity of

12   drugs here are very concerning.  In this instance,

13   Mr. Marmolejos has pleaded guilty to an offense involving a

14   kilogram of fentanyl and 3.1 kilograms of heroin.

15          As the government explained in its sentencing

16   submission, particularly the fentanyl is concerning.  This is

17   an inherently dangerous drug that poses a disproportionate

18   overdose risk.  As for the fentanyl and the heroin in

19   conjunction, they contribute to the opioid crisis that the

20   United States and New York City specifically are suffering

21   through.  So all drugs are dangerous, all drugs are serious.

22   These are particularly dangerous and particularly serious

23   drugs.  And the quantities here are well in excess of the

24   amount necessary to trigger the ten-year mandatory minimum,

25   which would be applicable if not for the defendant's safety

1    valve eligibility.

2           Another point that I wanted to note, which jumped out

3    at me last night as I was reviewing the materials in advance of

4    sentencing, is that there are a number of cases in this

5    district, I have been involved in some, in which the defendant

6    is essentially acting as a courier and is no more involved than

7    that.  I think that we would all agree that that sort of

8    minimal role is a significant mitigating factor in a narcotics

9    case.

10          In this instance, there are several facts which taken

11   together suggest that Mr. Marmolejos was involved in more than

12   mere quotidian narcotics distribution.  On at least two

13   occasions, when he is distributing narcotics to the CS, there

14   is actually another person involved, so Mr. Marmolejos arranges

15   the deal and is there.  Shortly after he stops speaking with

16   the CS, another person comes and delivers the drugs.

17          Another fact that jumped out to me is from paragraph

18   15 of the presentence report which reflects that Mr. Marmolejos

19   told the CS that he needed the money for the drugs that he was

20   selling, specifically the three kilograms of heroin, because he

21   owed $79,000 to a drug trafficking organization in Los Angeles.

22          So the government is certainly not taking the position

23   that a guidelines enhancement is appropriate because

24   Mr. Marmolejos was a leader or organizer, or something like

25   that, but I do think that in context Mr. Marmolejos' role here

1  appears to have been more than just a mere courier, and that's

2  reflected both by the facts that I just described as well as

3  the quantity of drugs.

4          For those reasons, the government believes that a

5  guidelines sentence would be appropriate here.

6          THE COURT:  Thank you.  Very helpful.

7          Mr. Del Valle, do you wish to be heard?

8          MR. DEL VALLE:  Yes.  If your Honor pleases.

9          Your Honor, I first would like to address the crime

10  itself.  It is a very serious crime.  Mr. Marmolejos is aware

11  of that now more than ever.

12          The thing I see often, and I dare say the Court sees

13  often, is that many drug defendants come before the Court and

14  say I didn't know what it was or I didn't know fentanyl, as it

15  is here, is that serious.  Then they realize.  The guidelines

16  reflect the seriousness of fentanyl accusations as opposed to

17  cocaine, for example.

18          The truth of the matter is that, no, Mr. Marmolejos

19  isn't a courier, we wouldn't say he was a courier, and that's

20  why he wasn't given any further consideration for being a

21  courier as a minor or minimal participant.

22          But Mr. Marmolejos was a broker.  As often is the

23  case, it is the person in between that puts people together.

24  When a person on the street, your Honor, says, I owe $79,000 to

25  Mexicans, it's because when drugs are missing, or people don't

1    pay on the drugs, or something goes wrong in some broker deal,

2    they are held responsible.  Someone is responsible to the

3    cartel.  We all know the viciousness of the cartel, especially

4    in Mexico, and the fear that that instills on people who are

5    arguably low-level street dealers.  I don't want to belabor the

6    point because I know there was a proffer here.  Obviously, the

7    government is satisfied from the proffer that Mr. Marmolejos

8    was honest, completely honest, about his role in this matter.

9         I do want to point out some personal things about

10   Mr. Marmolejos.  He is 34 years old, your Honor.  By virtue of

11   the fact that he's a permanent resident of the United States,

12   he stands to be deported immediately once completing his

13   sentence in this matter.

14        He has never been arrested in his entire life.  He has

15   a high school education, albeit from the Dominican Republic,

16   but he comes from a very, very humble family there.  His father

17   is still a farmer.  His mother sells what they harvest from

18   that farm in a small hut off the road in the Dominican

19   Republic.

20        They live, they continue to live under very poor

21   economic conditions.  I was very surprised that until this day

22   his mother and father lived in a home where there is no indoor

23   plumbing at all.  Water, they have to go outside.  Their

24   necessities, they have to go outside.  They did get some

25   electricity back when Mr. Marmolejos was eight years old, and

1      that's just been the essential same condition of this home.

2             At the age of seven, your Honor, Mr. Marmolejos would

3      have to wake up and 5 in the morning and milk cows before going

4      to school.  When he came home, he would complete the chores.

5      He never complained about that, but it was just part of his

6      life, of his upbringing.

7             He was fortunate enough, your Honor, to come into this

8      country, become a legal permanent resident.  And when he came

9      here, he had various jobs.  He was a dishwasher at Dave &

10     Buster's.  He was a manager of a supermarket in Newark.  He

11     worked at a sushi restaurant in Paterson, New Jersey.

12            In the midst of all of this, he got married to

13     Ms. Angie Rodriguez back in 2005.  They divorced in 2018.  But

14     as a product of that marriage they have a four-year-old

15     daughter, which Mr. Marmolejos is very, very close to.  This

16     daughter is a special child.  She suffers from autism and

17     really has touched everybody's heart in Mr. Marmolejos' family.

18     He also the father of a nine-year-old boy and another

19     ten-year-old daughter.  He is also the father of a 15-year-old

20     daughter.

21            The 15-year-old daughter, unfortunately, has taken

22     everything that has happened a little bit hard.  Mr. Marmolejos

23     blames himself for this, as personally I think he should.  But

24     she, unfortunately, has even attempted to commit suicide.  She

25     is under psychiatric treatment.  When asked, all she says and

1    repeats is she wants her daddy back.  She is 15 and that's the

2    way she speaks.

3            I have spoken to the family at length about this.  I

4    also tried to keep the family from submitting certain papers

5    directly to the Court because of HIPAA concerns.  But there are

6    letters that have been sent with respect to that.  And I know

7    your Honor has read each and every letter carefully.

8            If the Court will permit me, I just want to highlight

9    some of the letters.  I know there are multiple.  I am not

10   going through all of them.

11           But there is a letter from his 15-year-old daughter to

12   the Court, for purposes referred as CMR, which she indicates to

13   the Court that her depression and how she has tried to -- as

14   she put it:  I have hurt myself.

15           There is also a letter from the other daughter that

16   says:  My older brothers always looked up to my father and

17   looked up to him as a dad since his dad was not around.  So

18   this Mr. Marmolejos' stepson.  And she says that the defendant

19   was always really respectful when it comes to me.  He never

20   disrespected me or anyone in my family.  He is awesome with my

21   little brother, the most caring man I have ever met, the best

22   dad a kid could ask for.  He always tries to motivate me to go

23   to school and to improve myself into being someone.

24           There is a letter from Inwood Academy that speaks to

25   the toll this has taken on the 15-year-old daughter, which I'm

1   sure your Honor has reviewed, and the fact that she is going to

2   various counseling sessions.

3           There is a letter from the Jewish Board indicating the

4   diagnosis of the 15-year-old daughter and the intake

5   evaluations and psychiatric evaluations.

6           There are letters from the community, also.

7           One thing your Honor you will see, as a common

8   denominator in all these letters, aside from the fact that they

9   all speak about Mr. Marmolejos being a very good father and a

10  good son and a good nephew or grandson, it talks also about the

11  fact that he was a very giving person in his community,

12  especially in the Dominican Republic.

13          There is a letter here from his wife.  It says:  I

14  know Agustin Marmolejos since we were teenagers.  He would

15  always go to work with his father to help him and then went to

16  school.  He's a good father and he cares about his kids.  She

17  goes on to say when she was sick:  I had surgery, he took care

18  of me.  And he is always telling me to finish college and don't

19  worry about everything.  And he is also always worried about

20  the younger daughter that has autism.

21          His mother-in-law sent a letter.  That's Ms. Carmen

22  Lidia Gonzalez.  She says:  I have known Agustin since he was

23  17 years old.  He is an amazing father and a good person.

24          Mr. Marmolejos' mother sent a letter about him, not

25  too different from letters that any mother would send about

 1   their son.

 2           Interestingly, she puts down that:  He always

 3   organizes people from the environment to make collections and

 4   among all of them, giving gifts of food and toys to the less

 5   fortunate.  This situation has affected us all, but more to me

 6   emotionally, mentally, and physically.

 7           His aunt, Alicia Santos, goes on to say:  On

 8   Christmas, he is the one that cares for our children and the

 9   elderly in our community and helps them with gifts and toys for

10   the children.

11           His uncle, Mr. Paulina Marmolejos, says:  On

12   Christmas, he always sets the ambience, and he visits the

13   elderly and the children and gives them re-collected toys.  He

14   is a beautiful nephew with whom I used to go to church with,

15   and I would like to see him here once more so we could go back

16   together.

17           A neighbor in the Dominican Republic, her name is

18   Jesusita Santos Mercedes, writes:  He has always been helping a

19   whole community here, the elderly and the children.  Agustin is

20   a good son, a good father, a good husband, a good grandson, a

21   good nephew.

22           There is a pastor, he's a pastor of a church down in

23   the Dominican Republic and a friend of the family.  And he

24   says, aside from the fact that he knows the family and how good

25   of a person Agustin is that:  I can tell you about a time when

1    the church needed a vehicle to transport the brothers and

2    sisters.  Agustin found out about that and immediately gathered

3    a group of people to collect money and donations, and thank God

4    for the initiative he took because today the church has a

5    vehicle for the service of all.

6            His father, Mr. Antolin Marmolejos, says:  He always

7    helps those most in need, especially at Christmastime, by

8    making collections to provide food to various families and to

9    children with very few resources.  He gives toys.  He gives

10   collections.

11           His aunt, Basilia Santos, says:  He is not only my

12   nephew, but he is like my son.  He is very loving, happy, and

13   cooperative in all projects of the community.

14           There are various letters.  There is a letter from a

15   high school teacher.

16           THE COURT:  Mr. Del Valle, just so you know, I have

17   read all the letters.  I appreciate what you're doing.  You can

18   rest assured that I have read them in detail.

19           MR. DEL VALLE:  I thank your Honor for that, and I

20   know Mr. Marmolejos thanks you as well.

21           I just wanted the Court to see the common denominator,

22   not just the fact that he is considered a good father and a

23   good son or family member.  But the fact that -- I hate to say

24   the phrase because -- I'll dare say, sort of like a Robin Hood

25   type of situation here where he has gone back to this very,

1   very poor community and has given them, contributed to them,

2   and not only financially, but I guess emotionally as well when

3   he would go each and every Christmas to them.

4          Your Honor, clearly this is a very serious crime and

5   clearly Mr. Marmolejos acknowledges that.

6          I do want to talk about one other thing which I know

7   has been really resonant during this period of time and that's

8   Mr. Marmolejos' incarceration at the Metropolitan Detention

9   Center.  These are very drastic measures that they are taking

10  at Metropolitan Detention Center.

11         Without blaming anyone, at first they didn't know how

12  to handle this and these prisoners -- Mr. Marmolejos isn't

13  excluded from that -- were subject to 23, 24-hour lockdowns.

14  They were not able to communicate with their family at all.

15  They are still subject not to have any type of visitors at all.

16  They haven't seen their faces, the faces of any of their loved

17  ones, because unlike the forum where we are operating today,

18  they are not even allowed to do that.

19         When you have people locked in a situation like that

20  and they let them out unit by unit and they give them a certain

21  period of time, which is really an hour and 40 minutes, to make

22  phone calls, take a shower, and get your food, and then have to

23  really battle it out to get a phone call into your family.

24  Very rarely do you get to speak to your family, maybe once a

25  week.  The situation gets worse when something happens in the

1   institution.  Obviously, they just lock everybody down.

2   Mr. Marmolejos has gone as much as four or five days without

3   even being able to take a shower because someone else in the

4   unit was disciplined.

5        These are not the normal situations which I'd like to

6   say that the United States has in federal detention centers.  I

7   understand, I realize that we are in the middle of a pandemic.

8   But these are human beings that are locked under a situation in

9   a prison that's equivalent to third-world prisons.

10        And that is something where a person like Mr. Agustin

11   Marmolejos, had he committed this crime as little as two years

12   ago, he would not have suffered all of this.  And I ask that

13   the Court also take this into account because this is -- this

14   is really doing hard time there where he has been.

15        With all of that, your Honor, I respectfully request

16   that your Honor sentence Mr. Marmolejos on a variance from the

17   recommended sentence of the guidelines.  Thank you.

18        THE COURT:  Thank you, Mr. Del Valle.  Thank you for a

19   very effective sentencing submission.  Thank you for collecting

20   all of those very powerful letters.  As you know from prior

21   sentencings before me, I fully agree with your view that time

22   served during the COVID pandemic equates to harder time than

23   was ever intended and that needs to be reflected in the

24   sentence, I believe.

25        With that, Mr. Marmolejos, do you wish to make a

 1    statement?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  By all means, go ahead.

 4              THE DEFENDANT:  Your Honor and to everybody present,

 5    thank you for hearing me out in this court.

 6              Your Honor, I recognize that I have committed this

 7    crime, and I apologize to everybody whom I've hurt directly and

 8    indirectly and to the Court.  I also apologize to my family,

 9    and I apologize for any pain I may have caused them with my

10    actions.

11              This time that I've been deprived of my freedom has

12    been the most painful time of my life.  The conditions in

13    prison have been very severe due to the restrictions brought

14    about by the pandemic.  As my lawyer already stated, there is

15    no communication.  We have to keep distance.  The hygienic

16    conditions are not good.

17              And taking into account everything that I've

18    mentioned, please take into account how repentant I am.  I pray

19    to God and to your Honor to have mercy on me because both my

20    well-being and my freedom are in your hands.  I'm aware that

21    there is nothing that justifies my bad actions.  I'm very

22    remorseful and I'm very sorry and I am very repentant.  And I

23    ask you to give me an opportunity.  Independently of what your

24    decision may be today, I promise you that I will not commit

25    another crime.  Thank you.

1          THE COURT:  Thank you, Mr. Marmolejos.

2          I am going to take a moment and review my notes and

3   collect my thoughts.

4          (Pause)

5          THE COURT:  Is there any reason why sentence should

6   not now be imposed?

7          Government.

8          MR. SCHRIER:  No, your Honor.

9          THE COURT:  Defense.

10         MR. DEL VALLE:  No, your Honor.

11         THE COURT:  As I have stated, and as everyone agrees,

12  the guideline range that applies to this case, because the

13  safety valve applies, is between 70 and 87 months'

14  imprisonment.

15         Under the Supreme Court's decision in *Booker* and the

16  cases that have followed it, the guideline range is only one

17  factor that a Court must consider in deciding the appropriate

18  sentence.  The Court must also consider the other factors set

19  forth in the sentencing statute:  Title 18, United States Code,

20  Section 3553(a).

21         These factors include:  The nature and circumstances

22  of the offense and the history and characteristics of the

23  defendant, the need for the sentence imposed to reflect the

24  seriousness of the offense, to promote respect for the law and

25  to provide just punishment for the offense, the need for the

1  sentence imposed to afford adequate deterrence to criminal

2  conduct, the need for the sentence imposed to protect the

3  public from further crimes of the defendant, and the need for

4  the sentence imposed to provide the defendant with needed

5  educational or vocational training, medical care, or other

6  correctional treatment in the most effective manner.

7        The Court is also required to impose a sentence

8  sufficient but no greater than necessary to comply with the

9  purposes that I have just summarized, and here I find that the

10  sentence I'm about to pronounce is sufficient, but no greater

11  than necessary, to satisfy the purposes of sentencing that I

12  have just reviewed.

13        Mr. Marmolejos, I have given a lot of thought and

14  attention to the appropriate sentence in your case in light of

15  those Section 3553(a) factors and the appropriate purposes of

16  sentencing, as reflected in the statute.

17        The following are my thoughts:  Under Section 3553(a),

18  among other factors, I am to consider the seriousness of your

19  offense, the need for the sentence I impose to reflect just

20  punishment, the need for the sentence I impose to promote

21  respect for the law.  In other words, the sentence has to fit

22  the crime.  That factor weighs heavily here.

23        Over about a six-week period in the middle of 2019,

24  when you were collaborating with the government's confidential

25  source, you brokered a series of multikilogram quantity sales

1   of heroin and fentanyl.  The quantity of drugs that you

2   distributed was such that it supported a mandatory minimum

3   ten-year sentence under the narcotics laws, which the Court

4   would have been required to impose had you not qualified for

5   the safety valve.  There is every indication that you would

6   have kept on selling.

7           The government ultimately engineered a traffic stop

8   that appears to have aroused your suspicion that led you to cut

9   off contact with the CS.  Afterwards, the government lost track

10  of you until it intercepted you in December, attempting to

11  leave the country for the Dominican Republic.  Logically, there

12  is no reason to assume that your kilogram-level drug dealing

13  began with the confidential source, and there is no reason to

14  assume that your instinct to sell drugs as a means of making

15  money would have durably stopped after the confidential

16  source's cover was blown.  It is reasonable to infer is that

17  your intention was to engage in drug dealing over a longer

18  haul.

19          Your drug dealing is serious for obvious reasons.  As

20  a general matter, illegal narcotics produce drug addiction,

21  they correlate with violence, they destroy lives, they destroy

22  communities, they destroy families.  And while that is true in

23  general, it's particularly true of the drugs that you sold.

24          As a country, as Mr. Schrier said, we have been in the

25  midst of an opioid epidemic.  The number of deaths and lives

otherwise destroyed as a result of heroin is epidemic.

Fentanyl is even more toxic.  With absolutely no sign of any

hesitation or regret, you willingly pedaled very large

quantities of those drugs to the CS.

        Because the CS was working for the government, the

drugs that you sold him or conspired to sell didn't find their

way into the hands of buyers, but your expectation was that

they would.  To make money from illegal drugs, you were willing

to risk the lives and futures of the downstream drug buyers.

That is incredibly harmful and wrongful behavior.  More than

any other section 3553(a) factor, the gravity of your long

doing demands a substantial sentence.

        Under section 3553(a), I also have to consider the

interest in general deterrence.  That refers to the need for

the sentence I impose to send a message to other people that is

sufficient to deter them from engaging in similar crimes.  That

factor is present here, too.

        Drug dealing in general and heroin and fentanyl in

particular are huge problems in our country and in this

district.  I see far too many cases on my docket.  So do my

colleagues.  It is important that the sentences imposed in such

cases, taken as a whole, be sufficient to convey a message to

people who would follow your lead and sell these toxic drugs.

The message is don't do that because if you do so and you get

caught, you will be facing a long time behind bars.

 1          Under Section 3553(a), I also have to consider the

 2     interest in what's called specific deterrence.  That refers to

 3     the need for the sentence I impose to send a message to the

 4     specific defendant before me -- and here that's you,

 5     Mr. Marmolejos -- that is sufficient to deter him from

 6     committing future crimes.

 7          That factor is important here, but it weighs less than

 8     it does in cases involving defendants who have prior criminal

 9     records.  Where a defendant has been arrested and prosecuted

10     and sentenced before and then turns around and commits a new

11     serious crime like drug dealing, I generally conclude that a

12     longer sentence is needed in order to get their attention.

13     Their earlier sentences, by definition, had not been successful

14     as wakeup calls, so something more is needed.

15          Your situation is different.  Since this was your

16     first arrest and your time in prison in this case appears to be

17     your first time in prison, it is possible that the very hard

18     experience that you're now having, which you've had in federal

19     prison since late last December, will be the wakeup call that

20     you need and that a very long sentence is less necessary in

21     your case to get your attention enough to deter you from ever

22     committing such a crime again.  I hope so.

23          I do note, though, as to specific deterrence one

24     factor that points in the other direction.  You committed this

25     crime at age 33.  You did so as a fully grown adult and with

1   family responsibilities as a father of, by my count, four

2   children.  Many defendants whom I have sentenced for drug

3   crimes were in their late teens or early twenties.  In those

4   cases, their lawyers have often argued to me that the defendant

5   was young and immature and growing up.  That argument is not

6   really available to you due to the stage of life in which you

7   turned to drug dealing.  Bottom line, you can't claim to have

8   been young and still maturing at the time you committed the

9   crime.  I conclude that a meaningful sentence is needed here as

10  a matter of specific deterrence, although not nearly as long as

11  would have been necessary had you been a repeat offender.

12          Finally, under section 3553(a), I have to consider the

13  interests of public protection or incapacitation.  And that

14  refers to the benefit that the free public gets from your being

15  in federal prison where, by definition, you can't commit crimes

16  that endanger them.

17          That factor is also present here.  To the extent that

18  you might have any impulse to sell drugs, it follows that the

19  public is protected from your doing so from a sentence that

20  keeps you in prison.  Again, since this is your first offense,

21  it's less clear than in other cases that you are likely to

22  return to crime, and I sure hope you won't.  But because I

23  can't rule out that possibility, there is some public interest

24  here in your incapacitation.

25          So far, I have considered factors that, by their

1   nature, tend to favor a substantial sentence and a number of

2   them do in your case.  But there are factors that favor you in

3   the sentencing equation.  I want to review them with you now.

4            First off, you accepted responsibility.  You did so by

5   pleading guilty and admitting your crime and having the safety

6   valve proffer with the government.  Your plea of guilty makes a

7   difference to me, as it does under the sentencing guidelines.

8   Were it not for the guilty plea, please note that the sentence

9   I impose today would have been materially higher and, as I say,

10  you deserve credit for participating in the safety valve

11  proffer.  Your remarks today were also consistent with true

12  repentance, as you said.

13           Second, under Section 3553(a), I am to consider your

14  history and characteristics.  And from your counsel's very

15  thoughtful sentencing submissions and the letters attached to

16  it, as well as, of course, from the presentence report, I saw a

17  different side of you.  I noted you have a long history of

18  gainful employment, as reflected in paragraph 73 through 78 of

19  the presentence report, which reported the number of jobs

20  you've held several years at a time.

21           I noted as well the letters from your family, who

22  attested you are a devoted son, grandson, brother, and father.

23  I won't read excerpts from those aloud.  Please know that I

24  read them all with care and was moved by them.  You come across

25  as a person who has given deeply to his community, who means a

great deal and to whom his family is deeply devoted and whose

absence has left a great void and caused much anguish.  I was

particularly struck by the faith that your family has that you

will put this phase of your life behind you.  Your family and

your friends regard you as a good person who has made an

uncharacteristic mistake.  I was struck as well, as Mr. Del

Valle chronicled, how much your children are suffering in your

absence.

Finally, I'm mindful, as Mr. Del Valle rightly pointed

out, that you were taken into custody in late December and that

since March you have experienced harsh prison conditions on

account of the current pandemic.  The need to curb the spread

of COVID-19 has resulted in extreme lockdowns within the MCC,

on restrictions on family visits and contact and on

restrictions on visits and contact with attorneys.

As I've said in a number of other cases, and as

various colleagues of mine have also recognized, a day spent in

terribly substandard prison conditions, although not intended

as a form of punishment, exacts more punishment for an

incarcerated defendant than a day in ordinary conditions.  When

a defendant has already, before sentencing, suffered from

unusually arduous conditions, it's appropriate to consider that

experience in determining the appropriate sentence.  I'll do so

today.

The fact that for the past eight months or so in

1   custody has been in trying conditions is an argument for a

2   below-guidelines sentence, and the sentence I impose today will

3   be farther below the guidelines sentence than it otherwise

4   would have been on account of the conditions in which you've

5   been held.

6           In the end, my judgment is that a sentence, while

7   substantial, is also below the guidelines.  Such a sentence is

8   warranted here.  The fact that this was your first offense is

9   the principal reason, so too is the extra harsh nature of

10  federal custody today, and your personal characteristics that I

11  chronicled a moment ago matter too.  After giving the matter a

12  thought, I ultimately conclude that the sentence recommended by

13  the probation department, 36 months' imprisonment, is on the

14  mark.  Such a sentence under the particular circumstances here

15  is, in my view, sufficient to reflect the gravity of the

16  offense and to reflect just punishment.

17          I have considered whether a lower sentence than that

18  can be justified as reasonable and consistent with the 3553(a)

19  factors.  With regret and with particular attention to the

20  gravity of the crime, I don't believe that it can.

21          I am now going to formally state the sentence I intend

22  to impose.  The lawyers will have a further opportunity to make

23  legal objections before it is imposed.

24          Mr. Marmolejos, were we in court right now, I would

25  ask you to rise.  I don't want you to do that.  Just pay extra

1    close attention to what I'm about to say.

2          After assessing the particular facts of this case and

3    the factors under section 3553(a), including the sentencing

4    guidelines, it's the judgment of the Court that you are to

5    serve a sentence of 36 months' imprisonment to the custody of

6    the Bureau of Prisons to be followed by a period of three years

7    of supervised release.

8          As to supervised release, the standard conditions of

9    supervised release shall apply.  In addition, you shall be

10   subject to the following mandatory conditions:  You shall not

11   commit another federal, state, or local crime.  You shall not

12   illegally possess a controlled substance.  You shall not

13   possess a firearm or destructive device.  You must cooperate in

14   the collection of DNA as directed by the probation officer.

15         I'm also going to impose the special conditions that

16   are set out on page 24 of the presentence report.  For the

17   record, I incorporate by reference verbatim the special

18   conditions there.

19         Very briefly, just by way of overview, you are

20   required to obey the immigration laws and comply with the

21   directives of the immigration authorities.  You must

22   participate in an outpatient treatment program approved by the

23   U.S. Probation Department with respect to drug and alcohol

24   abuse.

25         And you shall submit your person and any property,

1  residence, vehicle, papers, computer, etc. to a search by the

2  probation department to be conducted when there is reasonable

3  suspicion concerning a violation of a condition of supervision.

4       I am doing that because the nature of this offense

5  says to me that it is possible that when you are on supervised

6  release, you will be tempted again to make the very terrible

7  mistake you did here and commit another crime like drug

8  dealing.  I hope that's not the case, but experience in many

9  other cases has told me that even with first offenders that

10  people do sometimes revert, while on supervised release, to

11  committing a crime.

12       I think it's useful for you to know that the probation

13  department will have maximum eyes on you and your things, your

14  computer and your home, your car and stuff.  If that helps stay

15  your hand, if it helps deter you from committing another crime,

16  it will ultimately observe the 3553 interest in your

17  rehabilitation and your successful return to lawful society and

18  it will protect the public by deterring you from committing

19  future crimes.  So for those reasons I want to include the

20  condition that empowers the probation department under the

21  circumstances recited to conduct such a search.  I'm required

22  to impose a special assessment of $100, and I do so.

23       Mr. Schrier, is the government seeking forfeiture?  I

24  take it restitution is not an issue in a crime like this.

25       MR. SCHRIER:  Your Honor, in this case no forfeiture

1   or restitution.  Forfeiture because of the unique circumstances

2   of the case regarding the consignment aspect of the arrangement

3   between the defendant and the CS.

4           THE COURT:  Thank you, Mr. Schrier.

5           I have the legal authority to impose a fine.  I am not

6   going to order you to pay one.  I am persuaded you don't have

7   the ability to pay it, to the extent you might have a very

8   slight ability to pay, and I would rather that money be used

9   for your family.

10          Does either counsel, beginning with the government,

11  know of any legal reason why this sentence shall not be imposed

12  as stated?

13          MR. SCHRIER:  No, your Honor.

14          THE COURT:  Defense.

15          MR. DEL VALLE:  No, your Honor.

16          THE COURT:  The sentence as stated is imposed.

17          Mr. Schrier, are there any open counts or underlying

18  indictment?

19          MR. SCHRIER:  There are none, your Honor.

20          THE COURT:  Mr. Marmolejos, to the extent you haven't

21  given up your right to appeal your conviction and your sentence

22  through your plea of guilty and the plea agreement you entered

23  into with the government, you have the right to appeal those

24  things, your conviction and your sentence.  If you are unable

25  to pay for the cost of an appeal, you may apply for leave to

1    appeal *in forma pauperis*.  The notice of appeal must be filed

2    within 14 days of the judgment of conviction.

3              Mr. Del Valle, any recommendation you'd like me to

4    give to the Bureau of Prisons?

5              MR. DEL VALLE:  Yes, your Honor.  First, I would ask

6    if the Court would consider an RDAP program for Mr. Marmolejos.

7              THE COURT:  I'm happy to recommend that he be admitted

8    to any drug treatment or alcohol treatment program in prison

9    for which he is eligible.  I'm glad to do that.

10             MR. DEL VALLE:  Thank you, your Honor.

11             Second, we would ask, to the extent that the Court can

12   recommend, that Mr. Marmolejos be housed in a facility close to

13   New York City, that being Fort Dix, if that's available, in New

14   Jersey.  I know and I explained to Mr. Marmolejos that the

15   Court cannot order this, but a recommendation sometimes is

16   highly regarded by the Bureau of Prisons.

17             THE COURT:  What I will do then is to recommend that

18   he be assigned to Fort Dix and, failing that, a location as

19   close as possible to New York City to accommodate family

20   visits.  Is that what you had in mind?

21             MR. DEL VALLE:  Yes, your Honor.  Thank you.

22             THE COURT:  I'm happy to do that.

23             Anything further from the defense?

24             MR. DEL VALLE:  Nothing further from the defendant.

25             THE COURT:  Anything further from the government?

1          MR. SCHRIER:  No, your Honor.

2          THE COURT:  Mr. Marmolejos, before we adjourn I want

3    to wish you the very best.  This was your first offense and

4    there is good reason to hope and expect that it will be your

5    last.

6          I hope you take a lot of pride and comfort and solace

7    from the wonderful things that the people who know you best

8    said in those beautiful letters to me.  Those really register

9    with me.  The fact that the people who know you best and

10   believe in you like that, that should give you great pride and,

11   hopefully, should be an impetus to lead you to conform your

12   conduct to the law going forward so that the same pride that

13   they have in you is borne out.  I have a great deal of

14   confidence this will be the last time that I or another judge

15   has occasion to see you.  Again, I wish you the very best.

16         Thank you.  We stand adjourned.  I wish all counsel

17   and everyone on the phone, court reporter, interpreter,

18   Mr. Marmolejos, a happy and healthy Thanksgiving.

19         Thank you.  We stand adjourned.

20         (Adjourned)

21

22

23

24

25